OVERTON et al., Respondents, v. WEBSTER et al., Appellants.

1. In an action for the recovery of specific real estate, arising under the practice act of 1849, the issues to be submitted to the jury are those raised by the pleadings; it is not proper in such case to direct any fact to be put in issue.

2. The fact that an executor, in applying to a county court for an order directing the reservation of the personal estate and a sale of real estate for the payment of debts, omits to bring to the notice of the court the will of the testator of record in said court, in which he directs that all his debts should be paid out of the personal effects of his estate, will not of itself affect the executor with a fraudulent intent in procuring the order.

*Appeal from Jackson Circuit Court.*

This action was commenced in the year 1850. Plaintiffs are the heirs and widow of Jesse Overton. Plaintiffs by an amended petition set forth substantially that said Jesse died in the year 1841; that said Jesse Overton made and published his last will and testament, appointing thereby John R. Swearengen and Aaron Overton to be the executors thereof; that said will was duly proved; that said Aaron Overton and J. R. Swearengen were duly qualified as executors; that said Jesse Overton died seized of certain real estate, and by his will directed and requested his executors to pay his debts out of his personal estate and effects; that the personal estate and effects that came to the hands of said executors were more than sufficient to pay and discharge all the debts due and owing by the testator; that said executors in April, 1843, presented a petition, verified by their joint affidavit, to the county court, accompanied by a list of debts, inventory, &c.; that said executors, or one of them, to-wit, Aaron Overton, with the design and fraudulent intent of becoming thereafter the purchaser of the lands in the petition and inventory mentioned, fraudulently represented to the county court by said petition that it would be for the interest and benefit of all persons interested in the estate of said testator to reserve from sale the personal property and to sell the real estate or so much thereof as should be necessary to pay the debts; that the county court, believing the representations contained in the petition, directed the personal estate to be reserved and the real estate to be sold for the purpose of paying the debts, said executors or one of them fraudulently omitting to present said will to the court, and more particularly that clause thereof directing and requiring the debts of the testator to be paid out of the personal estate and effects; that said county court did not give any construction whatever to said will in making said order; that at the time of the making of said order a portion of plaintiffs were minors having no guardians; that amongst other real estate of said Jesse Overton was the tract

in controversy, of which he owned an undivided half; that said undivided half, together with many other tracts, was ordered to be sold; that at the January term, 1844, of the county court a further order was made directing the sale of said undivided half for the payment of debts; that the executors did proceed to sell said undivided half of the tract in controversy; that in pursuance of said fraudulent design and intention of purchasing said land at a very low price and in fraud of said will, said executor, Aaron Overton, did indirectly become the purchaser of said land at the sum of $345, being about three-eighths of the appraised value thereof; that said Aaron Overton was present at the sale and when the report of said sale was made to the county court, and did not and would not join his co-executor in making said report or in making the affidavit required to be annexed to the report; that said report and affidavit were made by Swearengen alone; that said Aaron Overton paid the sum for which said land sold (if paid at all) with his own proper money; that he conveyed or caused the same to be conveyed to defendant Maxwell, said Maxwell paying him no consideration therefor; that at the time of the sale under the order of the court said Aaron Overton owned the other undivided half of the tract in controversy; that he fraudulently procured the sale of the other undivided half thereof to be made in violation of the express provision of the will, and in fraud of the rights of plaintiffs; that he became indirectly the purchaser thereof, at less than three-eighths of the appraised value, for his own private gain and advantage. Plaintiffs state that no title passed to or vested in the purchaser at the sale; that said sale was and is wholly void; that the right and title to the undivided half of the tract in controversy is vested in plaintiffs. " Therefore, they ask (as they have asked in their original petition) judgment for the possession of the undivided half of said land in the petition described, as well as judgment for their costs."

Defendant Maxwell answered the amended petition; Webster, his co-defendant, put in no answer.

The jury rendered the following verdict upon various issues framed and submitted to them at the instance of the plaintiffs: " Issue 1st. We the jury find that Aaron Overton did fraudulently procure the order of sale of the undivided half of the land in controversy mentioned in the petition, for the purpose of becoming the purchaser thereof indirectly; and we find that John R. Swearengen had no part or lot whatever in the fraud. Issue 2d. We the jury find that Aaron Overton did indirectly purchase said land in the petition mentioned. Issue 3d. We the jury find that said defendant Maxwell was privy to the fraud in procuring the order of sale of said land, and had knowledge of the fact. Issue 4th. We the jury find that Aaron Overton did cause the land to be conveyed to defendant Maxwell without any consideration except the purchase money as promised by Clarkson. Issue 5th. We the jury find that Thomas G. Clarkson did not, in good faith and for his own use, become the purchaser of said land at the sale, under the order of the Jackson county court, by Swearengen and Overton, as executors of the estate of Jesse Overton, deceased. Issue 6th. We the jury find that said Clarkson did purchase said land for Aaron Overton and not for himself; we find that Clarkson had no knowledge of the fraud in procuring the order. Issue 7th. We the jury find that although the defendant Maxwell has a conveyance from Clarkson, yet we believe the land to have been purchased by Clarkson for the said Aaron Overton. Issue 8th. We the jury find that Swearengen and Aaron Overton, as the executors of the estate of Jesse Overton, deceased, did make and acknowledge a deed to Clarkson for said tract of land, as alleged in Maxwell's answer, but can not say that said deed was delivered."

It is deemed unnecessary to set forth the evidence introduced or the numerous instructions given to the jury.

*Smart & Sheley*, for appellants.

I. Every principle involved in this case, except as to fraud, was decided by this court in Overton v. Johnson, 17 Mo. 442.

The county court had jurisdiction over the matter. It necessarily gave a judicial construction to the will of Jesse Overton. That order is conclusive against plaintiffs. (McNair v. Biddle, 8 Mo. 264; 9 Mo. 124; 2 How. 335; 5 Mo. 309; 11 S. & R. 460.) The court erred in instructing the jury that the will of Jesse Overton directed that his debts should be paid out of his personal property. The conversation of Aaron Overton with Clarkson was also improperly admitted. The county court judges were also improperly permitted to testify as to what occurred in the court. (12 Mo. 598.) The court also erred in refusing the instructions asked by defendant. The verdict was not warranted by the evidence.

*Hicks*, for respondents, cited R. C. 1835, p. 621, § 34; 15 Johns. 121; 2 Coke, Rep. 78; Dougl. 421; 2 Sand. 159; 1 Caines, 461; 2 Pet. C. C. 365; 12 Wend. 41; 1 Stark. Ev. 39; 6 Mass. 74.

SCOTT, Judge, delivered the opinion of the court.

The difficulties of this case arise mostly out of the manner in which it has been conducted. In the very threshhold of it we are beset with the obstacle whether it was an action which under the act of 1849 was triable by the court or by a jury. On the latter supposition we do not see by what authority the court directed issues to be submitted to the jury. When an action is a proper one to be tried by a jury the issues are submitted as they are made by the pleadings, and a general or special verdict may be found. In such cases the court has no authority to direct any other issue or issues than those which have been already framed by the pleadings. The parties, it is true, may waive a jury and have the action tried by the court, but that was not done here. This suit would seem to be for the recovery of specific real property, yet if that was the aim of the plaintiffs it does not appear what advantage they proposed by the amendment of their petition. The petition as amended, at first sight, would seem to be for the

attainment of equitable relief, but the omission of proper parties for that end, and the prayer of it, leaves the cause where it was before it was filed.   Since the present practice act has been in force, parties seem to imagine that they have a wonderful advantage in involving in uncertainty and doubt the object to be obtained by their pleadings.   But we do not see how they can possibly be benefitted by such a course.   If the courts will not compel them so to frame their pleadings before a trial is begun, by amendment if necessary, as to show what they aim at, how can they determine in what manner a cause is to be tried, whether by the court or by a jury ?   This omission leads to great embarrassment and usually results in a reversal of any judgment the plaintiff may obtain.   The case before us seems to have been regarded as one to be tried by the court, and a great many issues were made for trial by a jury ; while the defendants seem to have looked upon it as one to be tried by a jury without any other issues than those presented by the pleadings, and hence framed all their instructions on that supposition ; and there is nothing but a jumble and confusion in the record.   The questions of law involved are plain and simple ; all the difficulties arise or grow out of the manner in which the proceedings have been conducted.

As the record now stands, we must regard this as an action to recover possession of a specific parcel of land ; consequently it was a proper one for a jury trial.   Viewed in this light, we are of opinion that in the trial of the cause below too much importance was attached to the circumstance that the will of Jesse Overton was not read on the application for the reservation of the personal and the sale of the real estate.   As the only question before the jury was one of fraud in the sale by the executors or one of them, it was a matter of importance to have that question fairly submitted to the jury ; for if the jury was once improperly impressed with the idea that a fraud was practiced by Aaron Overton in procuring an order for the sale of the real estate, they would necessarily enter with that impression on their minds on the considera-

tion of the facts that occurred subsequently with a view to carry that order into effect ; and the fact that fraud was used in procuring the order of sale being once unduly impressed on them, they would readily impute fraud in his future conduct in carrying that order into execution. It must be borne in mind that fraud in the sale alone, without any connection with the act of procuring an order, would be sufficient to avoid the sale. But if the mind is once unduly impressed with the belief that a fraud was practiced in obtaining an order of sale, it will much more readily impute fraud to subsequent conduct in carrying that order into effect.

We can not see how the mere omission of itself to read the will of Jesse Overton on the application for the sale of the real estate can affect Aaron Overton with a fraudulent intent. As the will directed the payment of the debts out of the personal estate, it is maintained that the county court erred in reserving the personal and ordering a sale of the real estate. But how is A. Overton to be affected by the errors of that court ? If the order was erroneous it might have been reversed on an appeal. The will was recorded among the records of the court, and was open to the inspection of the judges. By what principle was Aaron Overton bound to present the will to the court ? Is it a presumption of law that he was acquainted with all its contents ? He, it is said, was no scholar and was only one of the executors, and all the business requiring any scholarship was entrusted to his coexecutor, he only attending to the out-door matters connected with the administration. If A. Overton was apprised of the provision in the will concerning the payment of debts, and he believed that a knowledge of that provision by the members of the county court would have prevented any order of sale, if he withheld the information for fear of such a consequence, or if he used any practices to hinder the judges from being informed of the provision, such conduct would be evidence of fraud to go to the jury. The jury found that there was no fraud in the co-executor in procuring the order of sale, although he prepared the papers necessary for the application,

Overton v. Webster.

and actually presented it to the court, and although he must be supposed to be as conversant with the contents of the will as Aaron Overton. We are then of the opinion that the conduct of the court in permitting the evidence of the county justices to be heard, followed by the instruction relative to the provision of the will concerning the source from which means were to be obtained to pay the debts, was calculated to mislead the jury and unduly impress them with the idea that a fraud was practiced by A. Overton because the will was not read.

We are not of the opinion, however, that it was necessary for the plaintiffs to have shown that a fraud was practiced in obtaining the order for the sale before they should have been entitled to a verdict. Although the order of sale may have been fairly obtained, yet a subsequent sale under such an order will for fraud and violation of law be avoided.

We come next to the question of the admissibility of Clarkson's evidence against Maxwell. As we understand this case, it goes on the assumption that the sale was void by reason of the fraud and violation of law involved in it; that, although Aaron Overton was the chief instrument in affecting the fraud, yet the defendant Maxwell was a party and privy to it; that Aaron Overton fraudulently and in violation of law became the purchaser of the land through the instrumentality of Clarkson for Maxwell, and that Maxwell was aware of the fraud and participated in it. Under this view it was necessary to show that Overton was guilty of a fraud. Certainly the evidence was competent to that purpose and therefore was admissible. The declarations of Overton, nothing more appearing, would not be evidence against Maxwell. But after evidence tending to show fraud on the part of Overton had been given, Maxwell afterwards becoming a party to the transaction, it was competent to submit his acts and conduct to the jury as evidence that he was privy to the fraudulent designs of Overton. The depositions of Swearengen and Clarkson (independently of what he relates as said by Over-

ton) furnish evidence proper to be submitted to a jury to show that Maxwell was privy to the fraud.

Judge Richardson concurring, the judgment will be reversed and the cause remanded.   Judge Napton did not sit.